55174, 55175. CITIZENS & SOUTHERN EQUIPMENT LEASING, INC. v. ATLANTA FEDERAL SAVINGS & LOAN ASSOCIATION (two cases).

ARGUED JANUARY 5, 1978 — DECIDED JANUARY 26, 1978 —
REHEARING DENIED FEBRUARY 14, 1978 —

*McClain, Mellen, Bowling & Hickman, James W. Culbreth, A. O. Bracey, III,* for appellant.

*Mitchell, Clarke, Pate & Anderson, Paul H. Anderson, Paul H. Anderson, Jr.,* for appellee.

DEEN, Presiding Judge.

■ The appellant contends that Atlanta Federal is precluded from claiming any interest in the equipment included in the lease inventory by reason of the following: First, when the complaint for declaratory judgment was dismissed in the bankruptcy court, counsel for the appellee, which was not a party to that proceeding, yielded to the request of other counsel in the case and signed a stipulation as follows: "The undersigned has read the foregoing, consents thereto, and agrees to be bound thereby." The stipulation was that "defendant agrees to and does hereby withdraw and dismiss with prejudice all of its counterclaim" including "allegations to the effect that the lease agreement. . . is not a true lease but one intended as security." Further, a letter written by one of the attorneys for the appellee during the bankruptcy

proceedings, stated that the Atlanta Federal financing statement "would have no application to those items which are owned by C & S Equipment Leasing and which were placed in the motel only under an equipment lease."

Is the appellee estopped, or has it by its attorney waived, its right to insist that the lease in question is not a true lease? "The right to claim an estoppel by waiver is based on the loss or surrender of an equivalent right which would still exist but for some act of the opposite party which has altered the position of him who insists upon the waiver. To derive the benefit of an estoppel by waiver, he who asserts a waiver must show either that he has lost something or that the opposite party gained something by the act in question by reason of which it would be unjust to permit the beneficiary of the intervening act to assert his pre-existent rights." *Southern Mfg. Co. v. R. L. Moss Mfg. Co.,* 13 Ga. App. 847 (3) (80 SE 1051). The appellee here contends that its attorney was expressing a private opinion in the letter, and was not agreeing in the dismissal of appellant's counterclaim to any proposal that the lease was a true lease, but only that the litigant had a right to dismiss a pleading making this contention. It must be remembered that the appellee was not a party to this particular aspect of the litigation. The explanations are reasonable; however, a jury question might be presented except for the fact that the appellant fails to show any of the conditions which give rise to an estoppel: that the statements were fraudulently made, or that the appellant relied upon them, or that the position of the appellant was worsened or that of the appellee ameliorated as a result. We do not believe that the statements above quoted, under the circumstances given where neither reliance nor change of position appears, should be dispositive of the case.

■ The loan deed to appellee is signed by the three partners, Roush, Buttrill, and Trunnell, as individuals. The appellee's lease has typed in "Suwanee Properties" under which each of these persons signed as a partner. "A partnership has no legal entity aside from that of the persons who unite as partners." *Scoggins v. Aetna Cas. & Sur. Co.,* 139 Ga. App. 805, 807 (229 SE2d 683). The fact that the partnership name is included over that of the

designated partner signatories in one instance and not in the other has no bearing on the respective priorities of the liens.

■ The most important, as well as the most difficult, question for decision here is whether the lease between the Suwanee partners and the appellant was intended as a security, in which event, in order to take precedence over the previously recorded loan deed to appellee also covering equipment, it was necessary for the lessor to perfect the security interest as required by the UCC, Ch. 9. "Unless a lease or consignment is intended as security, reservation of title thereunder is not a 'security interest'. . . Whether a lease is intended as security is to be determined by the facts of each case; however (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease, the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." Code § 109A-1—201 (37). A flat statement that only the lease may be considered in determining the intent of the parties is erroneous, since the Code itself requires that the question of true lease versus security lease is to be determined by "the facts of each case." "[T]he determining factor to be considered is the intention of the parties at the time the contract was entered into as construed in the light of facts and circumstances as they existed at that time. . ." In re Transcontinental Industries, Inc., 3 UCC Rep. Serv. 235, 242, citing Benton v. Comm. of Int. Rev., 197 F2d 745 and Frito-Lay, Inc. v. United States, 209 FSupp. 886. It is true that where the written lease is in fact intended as a complete and exclusive statement of the terms of the agreement, extrinsic evidence of further terms is not admissible. In re Atlanta Times, Inc., 259 FSupp. 820, 825. This is the meaning of the statement in *McGuire v. Associates Capital Services Corp.,* 133 Ga. App. 408 (210 SE2d 862), that the conduct of the parties is governed by the terms of the lease. As stated in "The Treatment of Equipment Leases as Security Agreements," by John R. Peden, 13 Wm. & Mary Law Review, pp. 110, 140, the test prescribed under the above

quoted Code section "contemplates that the parties' intention shall be judged objectively by reference to their total conduct, and not merely by overt expressions of their intention. The purpose of Art. 9 would be frustrated if evidentiary rules could be used to shield sham transactions." "Where there is no option to purchase or where the consideration approximates actual market value, no presumption is indicated under the Code definition, nor is any justified in either direction." Id., p. 154. As to option provisions for purchase by the lessee at the termination of the lease, where as here over 90 percent of the cost price of the equipment may have been paid over at the end of five years in one case and seven in the other, when the lease inventories terminate, there is neither a vesting of title in the lessee automatically or for a nominal amount on the one hand, nor is there a purchase price fixed which would clearly indicate that a "true lease" was involved: that is, one which clearly indicates the intention of the lessor to deal in the renting of objects rather than the financing of purchases. We cannot, therefore, consider this lease provision in and of itself as controlling. Further, while we are aware that the lease contains a statement that it represents the "full understanding of the parties" we do not construe this language so narrowly as to forgo considerations regarding, for example, the economic realities and consequences of the agreement. This interpretation, which appears to be adopted in practice, at least in the majority of cases, to some extent modified statements such as that in In re Crown Cartridge Corp., 220 FSupp. 914, 916, to the effect that the "test" of whether an agreement is a true lease or a conditional sale is whether the option price bears a resemblance to market value. In cases where by the end of the lease the market value has shrunk to less than 10 percent of its purchase price, this factor ceases to be controlling.

The lease contains a number of other provisions which are more common to security devices than to true leases. The lessor was not in the equipment business. It obtained the lessee's list of needs, which were ordered from manufacturers, billed to the bank, but delivered to the lessee, and never seen, checked on or inventoried by the bank or its subsidiary, the plaintiff. Another provision

held to signal a security transaction in In re Pomona Valley Inn, 4 UCC Rep. Serv. 893, besides the fact that the lessor and its assignee were not in the business of leasing equipment, was acceleration of "rentals" on default. Here the lessor may declare a default not only on a large number of listed contingencies but in any case where it has "good reason to feel insecure," and in the event of default it may accelerate all "rental" payments throughout the life of the lease. The lessor also has the right to periodic financial statements, and the suggestion occurs that a feeling of insecurity over one of these statements might be sufficient to trigger a default and acceleration of payments. Also, the lessor has the right to accelerate payments upon a finding of dispute as to whether any of the equipment has become a fixture (chandeliers and stove hoods are examples which fall in this category), may accelerate payments and, when the remaining lease "rentals" are paid the title then vests in the lessee, also suggesting that rental and purchase price, at least where the former is accelerated, approximate each other. At the time the lessor bank entered into this agreement it was aware of the existence of the Atlanta Federal loan deed, and that some of the inventory would be actually attached to the building and under the terminology of the lease the remainder was "constructively attached." This provision and the lease provision, taken together, could result in payment acceleration and title placement in the lessee at any time Atlanta Federal chose to make its claim based on the loan deed provisions. Again, although paper title remains in the lessor "though the passing of title is a part of the Code definition of sale, 'title' does not hold the same position as it did under former Georgia sales law." *Redfern Meats v. Hertz Corp.,* 134 Ga. App. 381, 392 (215 SE2d 10). That case holds, as did the trial judge here, that where many of the indicia of ownership remain in the lessee (the hold harmless clause; liability for taxes, insurance and charges naming the lessor as the insured in all-risks policy, etc.) mere paper title will not control. Granted, as stated in *Mays v. C. & S. Nat. Bank,* 132 Ga. App. 602, 609 (208 SE2d 614) these criteria alone are not decisive. Nor does the fact that the lessor requires a financing statement turn the

transaction ipso facto into a sale. *Rollins Communications v. Ga. Institute of Real Estate,* 140 Ga. App. 448 (1) (231 SE2d 397). The default provisions allow the lessor to both accelerate the remaining "rental" payments *and* seize the equipment, charging the lessee additionally with late costs, attorney fees and repossession costs. In *Pierce v. Leasing International,* 142 Ga. App. 371 (235 SE2d 752), similar default and acceleration provisions were held indicia of a conditional sale. The difference in the straight default provisions here is that the lessor appears to acquire all accelerated lease payments *plus* costs and attorney fees, *plus* the property itself, a result that would appear unjustifiable under either view of the transaction.

Other surrounding facts and circumstances listed in "The Treatment of Equipment Leases as Security Agreements," Peden, supra, p. 137 et seq., include a consideration of the length of the lease in relation to its economic life, relation between lease rental and market value, between option and list price, between option and actual depreciated value, acceleration of payments on default or on the occurrence of other circumstances, whether the property was acquired specifically for the customer, etc. Still other considerations are whether the lessor is truly in the leasing business, whether the rental payments build up equity, whether the lessee primarily wants the asset, not just its use, whether its economic life substantially exceeds the lease period, and like factors. "A lease will therefore create a security interest if: (a) it secures payment or performance of an obligation upon personal property reserved by the lease; and (b) the lease is intended as security. Such intention is to be determined objectively on the basis of the facts of the case, so that the parties' [self serving] declarations are not conclusive." Id., p. 136. The effect of the option to purchase, the third factor, has already been discussed.

We agree with the appellant that estimates of the remaining useful life of the equipment at the end of the lease term is in the nature of opinion evidence and will not of itself sustain a motion for summary judgment. There is, however, also evidence that by the end of the lease term the lessor would have recovered its entire capital outlay plus interest. "[T]he degree by which the total rentals

exceed the purchase value of the equipment compels the conclusion that no residual proprietary rights were contemplated. . ." Leasing Service Corp. v. American Nat. Bank & Trust Co., 19 UCC Rep. Serv. 252, 260 (in that case, as here, the excess ran approximately 8 percent per year). And in a similar fact situation in WOCO v. Benjamin Franklin Corp., 20 UCC Rep. Serv. 1015, with a lease remarkably like the one here under consideration, including the exclusion of warranties of merchantability and fitness for the purpose intended, which are normally included in a true lease, and the inclusion of repossession clauses, along with the fact that the lessor had no facilities for and did not hold itself out to be in the "leasing business," the court held, in its opinion that the agreement was by nature one for security rather than bailment, that: "This is precisely the type of agreement which Article 9 of the UCC was designed to cover."

Except for the opinion evidence as to the value of this personal property at the conclusion of the lease, the facts, as distinguished from their legal significance, are not in dispute, and a summary judgment one way or the other is therefore in order. We have considered the lease in the context of the facts and circumstances surrounding its execution and determine, in spite of the stipulation for an option to purchase at the conclusion of the agreement for its then market value, that it could not have been the intention of either party to expect that this would exceed a nominal amount, that the instrument in question is in fact a lease for security purposes under Code Ch. 109A-9 and that such was the true, although unstated, intention of the parties.

*Judgments granting summary judgment to Atlanta Federal and denying it to Citizens & Southern Equipment Leasing, Inc. affirmed. Smith and Banke, JJ., concur.*