In the Matter of GEHRKE ENTERPRIS-
ES, INC., Debtor.

UNITED GENERAL LEASING,
INC., Plaintiff,

v.

GEHRKE ENTERPRISES, INC.,
Defendant.

Bankruptcy No. 79–00982.

United States Bankruptcy Court,
W. D. Wisconsin.

Dec. 14, 1979.

Donald D. Eckhardt, Milwaukee, Wis., for plaintiff.

Roger G. Schnitzler, Madison, Wis., for defendant.

ROBERT D. MARTIN, Bankruptcy Judge.

## OPINION

This adversary proceeding seeking reclamation on six Freight-liner semi-tractors was tried to the court on November 20, 1979. The essential facts were proved as follows:

The defendant, debtor, Gehrke Enterprises, Inc. ("Gehrke") entered into agreements (collectively referred to herein as "the Agreements") with General Leasing Services Co., Inc., which on January 26, 1979, changed its name to that of the plaintiff, United General Leasing, Inc. ("Leasing"), on the dates and according to the terms summarized as follows:

Agreement A. November 8, 1978, Vehicle Lease Agreement, 1979 Freightliner, No. CA213HP152128, 48 monthly payments of $1,168.25;

Agreement B. November 8, 1978, Vehicle Lease Agreement, No. 7053–1, 1979 Freightliner, No. CA213HP152126, 48 monthly payments of $1,168.25;

Agreement C. November 8, 1979, Vehicle Lease Agreement, No. 7053–2, 1979 Freightliner, No. CA213HP152127, 48 monthly payments of $1,168.25;

Agreement D. October 8, 1977, Lease of Personal Property, one Freightliner tractor, No. CA213HM140341, 48 monthly payments of $991.74;

Agreement E. October 27, 1977, Lease of Personal Property, 1978 Freightliner, No. CA213HM40342, 48 monthly payments of $991.74; and

Agreement G. October 28, 1977, Lease of Personal Property, 1978 Freightliner tractor, No. CA213HM140343, 48 monthly payments of $991.74.

Each of the Agreements, in addition to other printed terms on the form, contained the following typed paragraph (the "residual guaranty clause"):

After expiration of lease, Lessor shall cause the vehicle to be sold. Should the

sale price be greater than $12,500.00 the overage shall be refunded to the Lessee as a reduction of rental. Should the sale price be less than $12,500.00 the difference shall be paid within 10 days of the sale to the Lessor as additional rental.

The residual guaranty clause characterized by Leasing's employee, John J. Tomann, as the "finance lease clause" is included by Leasing to provide some flexibility for lessees in the amount of monthly rental payments under the lease. If the guaranty price is high, the monthly rental payments can be lower. On the Gehrke Agreements, the sum of $12,500.00 was used to approximate the remainder of the purchase price of the truck plus financing costs which would not be amortized by the monthly rental payments.

The subject of each Agreement was a new semi-tractor selected by Gehrke from a dealer's inventory. Those tractors of the 1978 model year had suggested factory prices of approximately $48,729.00. Those of the 1979 model year had suggested factory prices of approximately $55,444.00. There was no evidence presented as to the actual purchase price of the vehicles. Testimony was undisputed that retail sales are usually at somewhat less than suggested factory prices, but otherwise approximate those prices.

No payments due Leasing from Gehrke on Agreements A, B and C, on June 1, 1979, or thereafter; on Agreement D on June 5, 1979, or thereafter; and on Agreements F and G due on July 1, 1979, or thereafter, have been paid.

Each of the Agreements by its terms grants plaintiff the right to possession of the subject vehicles in the event of default in performance of its terms and, specifically, in the event of failure to make monthly payments as provided by the Agreement. Each of the Agreements contains terms designating the filing of an insolvency proceeding a default under the Agreement.

On August 10, 1979, Gehrke filed a petition commencing a Chapter XI proceeding under the Bankruptcy Act. Gehrke has since that date, pursuant to § 342 of the Bankruptcy Act, acted as debtor-in-possession. At the time of filing of the petition commencing this Chapter XI proceeding, Gehrke had in its possession each of the six vehicles subject to the Agreements. Subsequent to filing this chapter proceeding, Gehrke, acting as debtor-in-possession, has refused Leasing's demand for surrender of possession of the subject vehicles, has continued to use the vehicles and has taken no action to disavow the Agreements. No payments have been made to Leasing by the debtor-in-possession.

On or about September 21, 1979, proceeds from the sale of shares of common stock having a net value of $26,804.99, which had been delivered to Leasing by Robert H. Gehrke as guarantor of the Agreements, were applied to Gehrke's indebtedness to Leasing, including the application of the following: $4,673.00 on Agreement A; $4,673.00 on Agreement B; $4,673.00 on Agreement C; $3,966.96 on Agreement D; $2,975.22 on Agreement F; and $2,868.59 on Agreement G.

On September 21, 1979, Leasing commenced this adversary proceeding praying that Gehrke be ordered to surrender possession of the subject vehicles to Leasing.

To determine whether Leasing is entitled to the relief it seeks, the source of its potential remedies must be explored. If the Agreements are determined to be true leases, those remedies can be determined from the terms of the Agreements and the law of bailment for hire.[1] However, if the Agreements are in the nature of security leases or conditional sales within the UCC definition of security interests,[2] the Agree-

---

1. See Ronald M. DeKoven, Proceedings After Default by Lessee Under a True Lease of Equipment, Chapter 29B, SECURED TRANSACTIONS, Bender's Uniform Commercial Code Service reprinted in Equipment Leasing, 1976 (Commercial Law and Practice Court Handbook Series 154).

2. Wis.Stat. § 401.201(37) provides in pertinent part, "Security interest" means an interest in personal property or fixtures which secures payment or performance of an obligation. . . . Unless a lease or consignment is intended as security, reservation of title thereunder is not a "security interest" but a

ments are subject to the requirements of the UCC (Wis.Stat. § 409.102) and the remedies are those set forth in Wis.Stat. § 409.501–507.

In its essence, the distinction between a true lease and a security lease is that by a true lease the lessor seeks to dispose of the use of the subject property while retaining incidents of ownership and by a security lease the lessor seeks to dispose of most or all of the incidents of ownership of the property, while retaining only sufficient interest in the property to assure payment of the contract obligation. The difficulty in making this distinction has given rise to considerable judicial and scholarly comment. Cases finding one or another term of a lease agreement or the totality of several such terms to be the accurate indication of the lessor and lessee's intention suggest a variety of tests.[3]

The search for a concise test of the distinction between a security lease and a true lease has been largely fruitless. The deceptively simple test suggested by Peter Coogan after a close analysis of UCC Section 1–201(37) and its statutory predecessors actually provides a thorough set of guidelines:

> [W]here the lessee has agreed to pay an amount substantially equal to the value of the goods of which he is to become the owner (or has the option to become the

consignment is in any event subject to the provisions on consignment sales (s. 402.326). Whether a lease is intended as security is to be determined by the facts of each case; however, a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

3. Among the terms found to be exclusive or primary for such tests are: A nominal purchase option, *Peco, Inc. v. Hartbauer Tool & Die Co.*, 262 Or. 573, 500 P.2d 708 (1972); *In Re Samoset Associates*, 24 UCC Rep.Serv. 510 (Bkcy J., D.Me.1978); *Appleway Leasing, Inc. v. Wilken*, 26 UCC Rep.Serv. 209 (Ore.Ct.App., 1979); a lease term equivalent to economic life of equipment, *In Re Lakeshore Transit—Kenosha, Inc.*, UCC Rep.Serv. 607 (Ref.Bkcy., E.D.Wis., 1969);

owner), the parties have entered into a conditional sale agreement.[4]

The leading commentator on equipment leasing has elaborated on Coogan's test,

> Coogan's test establishes the following three elements as the *sine qua non* for determining whether a lease is a finance lease: (1) there must be an agreement by the lessee to pay the lessor a set amount; [13] (2) such amount must be equivalent to

[13] "[I]f a lease contains an option in the lessee to terminate, then there is no obligation to pay an amount substantially equal to the purchase price and thus no conditional sale under pre-Code law as well as no security interest under the UCC." Coogan, § 4A.01[5][c].[5]

> the value of the leased goods; and (3) the lessee must become the owner or have the option to become the owner of the leased goods. If any one of these elements is lacking, the lease is not a finance lease, but a true lease. The test is of great significance as it not only determines the nature of the transaction, but it also determines the law applicable to the enforceability of the rights and remedies of the parties thereto.

The Coogan test as amplified by DeKoven presents a fair summary of the legislative philosophy reflected in the adoption of UCC Section 1–201(37) and the rationale of the better reasoned opinions. Although no case

*Atlas Industries, Inc. v. National Cash Register Co.*, 216 Kan. 213, 531 P.2d 41 (1975); an obligation to pay full purchase price, *Leasing Service Corp. v. American National Bank & Trust Co.*, 19 UCC Rep.Serv. 252 (D.N.J.1976); *National Equipment Rental Ltd. v. Priority Electronics Corp.*, 435 F.Supp. 236 (E.D.N.Y. 1977); *Citizens & Southern Equipment Leasing, Inc. v. Atlanta Federal Savings & Loan Ass'n*, 144 Ga.App. 800, 243 S.E.2d 243 (1978).

4. Coogan, Leases of Equipment and Some Other Unconventional Security Devices: An Analysis of UCC Section 1–201(37) and Article 9, 1 Bender's Secured Transactions Under the Uniform Commercial Code § 4A.07[1].

5. Ronald M. DeKoven, Leases of Equipment: *Puritan Leasing Company v. August*, a Dangerous Decision, 12 University of San Francisco Law Review, page 259 (1978).

controlling this court has applied the precise test suggested, its adoption appears to be appropriate for consideration of the present case.

■ Each of the Agreements in this case provides at the election of Leasing immediate acceleration of all indebtedness under the Agreement if lessee defaults. In addition, none of the Agreements provide any terms for a voluntary termination of the Agreement by Gehrke prior to its stated term as a means of reducing Gehrke's obligation. Therefore, Gehrke was obligated to pay the full amount of rental called for in the lease and the first element of the test is therefore met.

A calculation of the rentals due under each of the Agreements indicates that the 48 monthly payments, together with the residual guaranty rental payment of $12,-500.00 upon termination, represent a sum substantially in excess of the suggested factory prices of the subject vehicles. The excess in each case approximates the cost of financing the suggested factory price for a period of 48 months. The uncontroverted testimony of John J. Tomann, an employee of the plaintiff, who supervised the subject lease Agreements supports the conclusion that Leasing did in fact calculate the rental payments to recover the full value of the leased vehicles within the terms of each Agreement, together with the finance costs and administration costs relating to the purchase of the vehicles and the administration of the Agreements. Thus, the amount Gehrke was obligated to pay Leasing under the Agreements was equivalent to the value of the leased goods and the second element of the test is met.

The final element of the test is less easily met in the present case. None of the agreements by their express terms provide for the transfer of ownership upon termination of the lease to Gehrke nor do they provide any option to Gehrke to purchase the subject vehicles for nominal or essentially nominal consideration at the termination of the lease. Gehrke has suggested that the residual guaranty clause in the lease is effectively an offer to sell and that the guaranteed amount of $12,500.00 is a nominal purchase price in the circumstances. Neither of those contentions has substantial merit. Although the residual guaranty clause requires a disposition of the vehicles by sale at the termination of the Agreements, there is nothing in the language of the clause nor anything that may be imputed to the clause which indicates that the sale need be made to Gehrke. Furthermore, although there was some conflict of testimony as to what the value of the vehicles might be at the end of 48 months, there was no credible evidence that $12,-500.00 would be less than half of the retail value of the vehicles at that time and, therefore, cannot be considered nominal.

The absence of an express transfer or option does not dispose of the question. As has been noted, "Since the parties to these transactions are often clever in their attempts to disguise a finance transaction as a true lease, ownership should be liberally defined." [6] Leasing did not own the vehicles prior to the Agreements. During the term of the Agreements, Gehrke was responsible for all of the normal maintenance and insurance obligations which under other circumstances might be incidents of ownership. Although the Agreements specify that the title to and primary licenses on the vehicles will be maintained in Leasing, Leasing retained no other substantial incidents of ownership during the term of the Agreements. Upon termination of the Agreements, Leasing was obligated to dispose of the vehicle by sale pursuant to the residual guaranty clause and, therefore, did not recover use of the vehicles. Thus, upon the termination of the Agreement, Leasing was required to transfer title and thereby terminate the sole significant incident of ownership it had possessed to that point.

Sale pursuant to the residual guaranty clause would not produce for Leasing the value of the title to the vehicles. Leasing would not receive the value of the vehicles in excess of the $12,500.00 amount set at

6. DeKoven, supra, note 5 at page 262.

the time the Agreement was signed as the amount necessary to pay the unpaid principal, interest and costs for the initial purchase of the vehicle. Similarly, Leasing would suffer no loss or deficiency upon the sale. Thus, "the lessor has no opportunity to obtain any meaningful residual value . . . since the lessee is entitled to the 'surplus' and is obligated for the 'deficiency'." [7] Gehrke, therefore, would effectively bear the loss or reap the benefit which would be due to an owner. With the reservation of record title, Leasing by the Agreements, transferred all significant incidents of ownership to Gehrke at the time the Agreements were entered into and thereby, Gehrke became the owner of the vehicles for the purposes of analysis under the test we have adopted.

■ Because the Agreements have met all of the elements of the Coogan test for finance leases or conditional sales, the Agreements are subject to the requirements of Article 2 and Article 9 of the UCC. In determining Leasing's rights under the UCC its retention of title is immaterial. Wis.Stat. § 409.202. There is no evidence that Leasing availed itself of the protection of Wis.Stat. § 409.408 to make a protective filing under Wis.Stat. § 409.401 to § 409.409 to perfect its lien by filing. The certificates of title are not in evidence and, therefore, the compliance of Leasing with the provisions of the Vehicle Title and Anti-theft Law, Wis.Stat. § 342.19 through § 342.24, which relate to the perfection of security interests in vehicles cannot be determined.

■ Leasing has suggested that because of its election to declare the Agreements in default prior to commencement of this Chapter XI proceeding, the Agreements were terminated and that by terminating the Agreements prior to the commencement of the Chapter XI proceeding, Leasing avoided the Bankruptcy Court's jurisdiction to determine that Gehrke can continue in possession of the vehicles. Leasing relies in its argument upon *Schokbeton Industries, Inc. v. Schokbeton Products Corporation,*

466 F.2d 171 (5th Cir., 1972). *Schokbeton* held that a Chapter XI court could not compel the owner of a patent to continue to perform under the licensing agreement which was in default prior to the filing and not affirmed by the debtor-in-possession within the time permitted by the agreement. Leasing's reliance on *Schokbeton* is misplaced for two reasons: (1) remedies under the licensing agreement under *Schokbeton* arose at common law and, therefore, may provide an analogy to true leases, but would have no application to the present agreements in which the remedies are governed by the UCC; and (2) the circuit court gives special attention in *Schokbeton* to the fact that although intangible property rights are in some cases subject to "possession," the debtor in *Schokbeton* had after the termination of the licensing agreement nothing which could be "possessed." In the present case, the subject matter of the Agreements is the six tangible trucks which have at no time left the possession of Gehrke. The relief sought here by Leasing is specifically the physical transfer of possession to those vehicles and its right to that remedy is controlled by the UCC and the Vehicle Title and Anti-theft Law as enacted in Wisconsin.

■ By virtue of § 342 of the Bankruptcy Act, Gehrke, as debtor-in-possession, has all the rights and title to property of a trustee appointed under § 44(a) of the Bankruptcy Act and Rule 209 of the Bankruptcy Rules. The applicable rights to property are set out in § 70 of the Bankruptcy Act which provides at § 70(c),

The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or

7. Burke, Annual Survey—Secured Transactions, 34 Business Lawyer, 1547, 1550 (1979).

equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists.

. . .

Thus, the debtor-in-possession has rights to all personal property in its possession, superior to all but those who have complied with the perfection requirements of the applicable statutes. Leasing has failed to prove that as of August 10, 1979, it had perfected its security interest in the vehicles. Absent that proof, Leasing is not entitled to the relief it requested in this proceeding.

Upon the foregoing which shall constitute my Findings of Fact and Conclusions of Law in this matter, it is hereby

ORDERED that the complaint of the plaintiff be and hereby is dismissed.