**In the Matter of FULTON TEXTILES, INC., Debtor.**

**TRI LEASING CORPORATION, Movant,**

**v.**

**FULTON TEXTILES, INC., Respondent.**

**Bankruptcy No. A90–01954–WHD.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

June 29, 1990.

C. Cyrus Malone, Freisem, Swann & Malone, Atlanta, Ga., for Tri Leasing Corp.

Herbert C. Broadfoot, II, Gray, Gilliland & Gold, P.C., Atlanta, Ga., Chapter 11 Trustee.

James R. Sacca, Macey, Wilensky, Cohen, Wittner & Kessler, Atlanta, Ga., for debtor/Fulton Textiles, Inc.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter is before the Court on the motion of Tri–Leasing Corp. (hereinafter referred to as "Tri–Leasing") to lift the automatic stay or alternatively to require Fulton Textiles, Inc. (hereinafter "Debtor") to assume or reject its equipment lease, filed on February 16, 1990. This Court held a hearing on the motion on March 27, 1990, at which it requested that the parties submit briefs on the issue of whether the agreement in question was a true lease or a security agreement. Having considered the post-hearing briefs and supplemental briefs filed by both parties, this Court DENIES the motion for the reasons set forth below.

## FINDINGS OF FACT

On June 30, 1988, Debtor entered into a "Lease Agreement" (the "Agreement") with Diamond Acceptance Corp. ("Diamond") with respect to a dye machine to be used in Debtor's textile operations (the "Equipment"). Diamond bought the Equipment from Wink Davis Equipment Company at Debtor's request for approximately $40,000.00, and under the Agreement Debtor was to pay $1,041.22 per

month to Diamond for sixty (60) months for the use of the Equipment. The Agreement designated Debtor as "Lessee," Diamond as "Lessor," and Wink Davis as the "Supplier" or "Vendor." The following pertinent provisions were also included in the Agreement:

14. **SURRENDER.** Upon demand by Lessor made pursuant to paragraph 22 hereof or upon termination of this agreement in the event Lessee does not exercise its option to purchase the Equipment, Lessee, at its expense, shall return Equipment by delivering it in the same condition as when delivered to Lessee, reasonable wear and tear excepted, as Lessor may specify.

20. **TITLE TO EQUIPMENT: ASSIGNMENT.** Title to the equipment shall at all times remain in Lessor, and Lessee shall have no right, title or interest therein or thereto except as provided in this agreement ...

22. **DEFAULT.** (a) If Lessee fails to pay when due any rent or other amount required by this agreement to be paid by Lessee, makes an assignment for the benefit of creditors, whether voluntary or involuntary, or a petition is filed by or against Lessee under the Bankruptcy Act, Lessor shall have the right to exercise any one of the following remedies in order to protect the interests and reasonably expected profits and bargains of Lessor: ... (iii) Lessor may recover from Lessee, with respect to any and all items of Equipment, and with or without repossessing the Equipment, the sum of (1) all rent and other amounts due and to become due, less a prepayment credit for rent not yet due at the time of payment or judgment, ... and (2) the reversionary value of Equipment at the end of the current term which it is agreed shall be ten percent (10%) of the total rent as set forth in paragraph 9 hereof; provided that, upon repossession or surrender of Equipment, Lessor shall sell, lease or otherwise dispose of such Equipment in a commercially reasonable manner ... and apply the net proceeds thereof ... to the sum of (1) and (2) above.

26. **PURCHASE AGREEMENTS.** Lessee warrants that, if the Equipment is subject to a purchase agreement or contract ... between Lessee and Vendor, the Equipment has not been delivered to Lessee as of the date hereof. As part of this agreement, Lessee hereby transfers and assigns to Lessor all of its rights, but none of its obligations (except as provided below), in and under this agreement, but not limited to the right to take title to the Equipment....

29. **MISCELLANEOUS.** This agreement constitutes the entire agreement and understanding between Lessor and Lessee with respect to its subject matters and shall not be amended or changed except by a written agreement duly executed by the parties ... No oral agreement, guarantee, promise, condition, representation or warranty shall be binding on Lessor. All prior conversations, agreements or representations relating to this agreement are integrated in this agreement, and no modification of this agreement shall be binding unless in writing signed by the parties.

Debtor negotiated the Agreement through JKR Associates ("JKR"), a broker who locates financing for businesses, who, according to Debtor's affidavit, allegedly told Debtor that under the Agreement the Equipment would belong to Debtor at the end of the sixty month lease term. The Equipment was bolted to the floor of Debtor's business premises, and Diamond filed a U.C.C. financing statement in Gwinnett County with respect to the Equipment.

On November 20, 1989, Tri–Leasing purchased the Agreement from Diamond. At that time Debtor was ten months delinquent on its payments under the Agreement, and on December 1, 1990, Tri–Leasing sent notice to Debtor that it had purchased the Agreement and that the Agreement was being terminated due to Debtor's default. Tri–Leasing did not attempt to repossess the Equipment before Debtor filed its Chapter 11 petition on February 12, 1990.

## CONCLUSIONS OF LAW

In its motion, Tri–Leasing asked the Court to either lift the automatic stay, if it finds that the Agreement was terminated prior to Debtor's filing, or to require Debtor to either assume or reject the Agreement. Neither remedy is appropriate if the Court finds that the Agreement is not a lease at all and instead is a security agreement. The Bankruptcy Code defines "security agreement" as an "agreement that creates or provides for a security interest," 11 U.S.C. § 101(44) (1990), and whether a lease constitutes a security interest under the Code depends on whether it constitutes a security interest under applicable state law, H.Rep.No. 595, 95th Cong., 1st Sess. 314 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin. News 5787, 6271. Under the Georgia Code,

> [w]hether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease, the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Ga.Code Ann. § 11–1–201(37) (1990).[1] In construing the statutory language, this Court has applied the following three-part test:

> One, there must be an agreement by the lessee to pay the lessor a set amount. Two, the amount must be equivalent to the value of the leased goods. Three, the lessee must become the owner or have the option to become the owner of the leased goods. If any one of these elements is lacking, the lease is not a financing agreement but is a true lease.

*In re Huffman,* 63 B.R. 737, 738 (Bankr.N. D.Ga.1986); *In re Pledger Roy Wood,* 7 B.R. 543, 535 (Bankr.N.D.Ga.1980).

Before applying this test, the Court shall address Debtor's request to admit its affidavit to show that Debtor believed that under the Agreement the Equipment would belong to Debtor at the end of the sixty month lease term. It is true that the question of the parties' intent is at the heart of the distinction between a true lease and a security agreement, and that evidence of intent can be used to explain the terms of a contract in order to determine their true nature, even in the presence of a contract provision that states that the agreement constitutes the entire understanding between the parties, *Citizens and Southern Equip. Leasing, Inc. v. Atlanta Fed. Sav. & Loan Ass'n,* 144 Ga.App. 800, 805, 243 S.E.2d 243 (1978) (hereinafter referred to as *"C&S"*); *In re Nat'l Traveler, Inc.,* 110 B.R. 619, 621 (Bankr.M.D.Ga.1990). However, the Court in *C&S* explicitly recognized that self-serving testimony cannot be used as evidence of intent, 144 Ga.App. at 808, 243 S.E.2d 243 and such intent may only be determined through an analysis of the contract language itself and the circumstances surrounding the contract, *Id.* at 805–06, 243 S.E.2d 243; *National Traveler,* 110 B.R. at 621; *see also Kleiner v. First Nat. Bank,* 97 F.R.D. 683, 693 (N.D. Ga.1983).

The first two parts of the above test indicate that the Agreement is a security agreement rather than a true lease. The Agreement was to "lease" the Equipment for $1,041.22 per month over a period of sixty months, which comes to a "sum certain" of $62,473.20. This amount approximates the original purchase price of the Equipment, which was approximately $40,-000, plus 15% interest.

The third element is somewhat more difficult to discern from the face of the Agreement. Paragraph 20 specifically provides that title to the Equipment shall at all times remain in the Lessor, which is indicative of a true lease, *Woods v. Gen. Elec. Credit Auto Lease, Inc.,* 187 Ga.App. 57, 59, 369 S.E.2d 334 (1988), but according to

---

**1.** This Court shall make reference only to the Georgia Commercial Code as it currently exists. Proposed amendments to the Uniform Commer-

cial Code's Section 9–201(37) have not been adopted in Georgia and therefore have no bearing in the determination of this dispute.

paragraph 14, upon termination of the Agreement the Lessee must return the Equipment to the Lessor "in the event Lessee does not exercise its option to purchase the Equipment." No provision of the Agreement sets out terms for such an option, however, and the Court is not aware of any external purchase agreement between Debtor and Wink Davis Equipment Company that provides terms which could be incorporated into the Agreement pursuant to paragraph 26. Nor does the default provision of paragraph 22, which at the Lessor's option may require the Lessee to pay the sum of all rents due plus the reversionary value of the property equal to ten percent of total rent for the Equipment, provide terms for an option to purchase. This acceleration of payments is one of several options available to Tri–Leasing, not to Debtor, under the default provision, and even if it does choose that remedy, Tri–Leasing may also choose to repossess the Equipment, sell it, and apply the proceeds of the sale to Debtor's payments under that provision, rather than to allow Debtor to keep the Equipment. Additionally, the acceleration occurs only upon specified instances of default, and there are no surrounding circumstances in this case indicating that these instances were anticipated when the parties entered the Agreement.[2]

At this juncture, the Court has two choices. First, it can conclude that there is no option to purchase because of the absence of specific terms to the option, as urged by Tri–Leasing. In order to reach this conclusion, however, this Court would have to assume that the words "in the event Lessee does not exercise its option to purchase the Equipment" had no meaning, which goes against a basic tenet of contract interpretation that the best interpretation is one that gives meaning to all of the language in a contract, *Gans v. Georgia Fed. Sav. & Loan Ass'n*, 179 Ga.App. 660, 662, 347 S.E.2d 615 (1986); *Stern's Gallery of Gifts, Inc. v. Corporate Property Investors, Inc.*, 176 Ga.App. 586, 594, 337 S.E.2d 29 (1985). Second, it may decide that there is an option to purchase the Equipment for no additional consideration. As mentioned above, at the end of sixty months Debtor will have paid approximately $60,000 in rent for the Equipment, which was purchased for approximately $40,000. Since the Equipment and interest payments of 15% would be paid for at the end of the term of the Agreement, there is no need to add additional terms. The Court finds the second choice to be the more logical one, and therefore concludes that the Agreement included an option to purchase for no additional consideration.

The Court does not need to address the various factors set out by the Georgia Court of Appeals in *C & S* and *Woods*, because, unlike in those cases, the Agreement in this case satisfies all of the elements of the three-part test and fits squarely within the statutory definition of a security agreement. As a result, the Agreement cannot be assumed or rejected under the provisions of Bankruptcy Code § 365. Moreover, because the Agreement is to be construed as a security agreement for the sale of the Equipment, Debtor has an equitable property interest in the Equipment, regardless of the Lessor's retention of legal title under the Agreement, *see In re DesChamps*, 79 B.R. 62 (Bankr.M.D.Fla. 1987); therefore the automatic stay remains in effect with regard to the Equip-

---

**2.** In marked contrast is the *C & S* case, wherein the lease provided that the lessor could accelerate the balance of rent payments in case of default, which could occur when lessor "feels insecure for any good reason," and required the lessee to submit financial statements regularly; it also provided that if any claim was made on the leased equipment by a third party because the equipment was attached to realty, the lessee had to pay the balance of the rental payments, the lease terminated, and the lessor's title became property of the lessee, 144 Ga.App. at 802, 243 S.E.2d 243. The Georgia Court of Appeals found that the acceleration in event of a fixture dispute suggested that the rental and purchase prices approximated each other, and thought it was significant that the lessor knew that another bank had a lien on the real property to which the equipment might be affixed and therefore expected to be able to accelerate the debt as soon as the bank asserted a claim against the equipment, *Id.* at 807, 243 S.E.2d 243. Therefore, under those circumstances, that Court apparently thought it was very likely that the debt would be accelerated and that title would be passed to the lessee under the lease.

ment. Accordingly, Tri–Leasing's motion to require Debtor to assume or reject the Agreement and alternatively for relief from the automatic stay is DENIED.

IT IS SO ORDERED.