WENDT, Respondent, vs. VOGEL, Executor, Appellant.

*March 21 — April 10, 1894.*

*Building contracts: Recovery by subcontractor without superintendent's certificate: Extra work.*

1. Under an agreement between a building contractor and a subcontractor that the work to be done by the latter shall be done to the satisfaction of the superintendents, that their decision as to the quality of the work and materials shall be conclusive, and that payments shall be made only on their certificates, there can be no recovery by the subcontractor without such certificates, unless they are withheld dishonestly, fraudulently, or arbitrarily, or clearly by mistake.

2. The mistake which will authorize a recovery without the certificates in such a case is unintentional misapprehension or ignorance of some material fact, and must be clearly shown by the evidence, and be so gross and palpable that it is equivalent in its effects to dishonest, fraudulent, or merely arbitrary action.

3. A subcontractor cannot recover from the contractor for extra work done on the order of the superintendent, when such order was given, to his knowledge, on behalf of the owner and not of the contractor.

APPEAL from the Circuit Court for *Milwaukee* County.
Action by a subcontractor against his principal contractor to recover a balance due for mason work upon a building. In 1889, one Buestrin, defendant's testator, contracted with one Ricker to erect a building in the city of Milwaukee, on Ricker's land. Buestrin contracted in writing with plaintiff to do the mason work on the building for the sum of $4,448. This contract is attached to the complaint, and it provides, among other things, for the payment of the plaintiff upon certified estimates of the superintendents, Messrs. H. C. Koch & Co. It also provides that all the work is to be done to the entire satisfaction of the superintendents; that in case of disagreement between the parties as to the quality of the work or material or any other matter connected

with the work, the decision of the superintendents shall be final and conclusive; also, that in case any alteration should hereafter be made by order of the party of the second part or by direction of the said superintendents, by varying from the plans or specifications either by adding thereto or diminishing therefrom or otherwise however, such alterations shall not vacate the contract hereby entered into, but such additions and deductions shall be estimated by said superintendents at their proper value, and added to or deducted from the gross amount to be paid as above mentioned.

The complaint alleges due performance of all the work under the contract, also the performance and furnishing of extra labor and materials at defendant's request to the additional amount of $157, and that there is due and unpaid on the contract, including extras, the sum of $435. The complaint further alleges that plaintiff requested the superintendent to give him a certificate of completion of the work in accordance with his contract, which said superintendent refused to do — *first*, because some of the whitewash put in the building by plaintiff came off; but plaintiff alleges that the whitewash came off on account of the act of Buestrin in putting in green lumber in the building; *second*, the superintendent said that he had nothing to do with it, and that plaintiff should go and see the defendant.

The answer denies that plaintiff ever completed the work according to the contract or to the satisfaction of the superintendents, and avers that they refused to give the plaintiff any estimate or certificate of allowance for any payment to the plaintiff above the payments admitted in the complaint. The answer also denies that defendant ever requested any extra work done, and avers that if any was done by the plaintiff, it was done by order of the owner of the building. The answer also contains a counterclaim for plaintiff's default in not fulfilling his contract to the satis-

faction of the superintendents.  A reply to the counter-
claim was served by plaintiff, alleging that if defendant
suffered damage it was by reason of his own default in fur-
nishing green lumber and bad material.

On the trial, the plaintiff testified to the completion of
his contract.  It appeared, further, that one part of plaintiff's
work under the specifications of his contract was to white-
wash the greater part of the interior of the building, in-
cluding under side of roof and ceilings, and that the mason
must protect his part of the work against frost during con-
struction.   The whitewashing was done in winter.   It also
appeared from plaintiff's evidence that the whitewash came
off from the ceilings and the roof, but there was some evi-
dence tending to show that the whitewash was of good
quality, and that it came off because the lumber was green.
It further appeared by plaintiff's own evidence that the
superintendents refused a final certificate on the ground
that the whitewash came off.   It was admitted by defend-
ant that plaintiff did work on the building, not included in
his contract, to the amount of $157.  Plaintiff testified that
this work was ordered by one Stoltz, the superintendent
of the building for.H. C. Koch & Co.   Upon this evidence,
the defendant moved for a nonsuit, which was overruled,
and exception taken.

On the part of the defendant there was much evidence
by the superintendents of the building, and by others, to
the effect that the lumber used was seasoned and dry, and
that the whitewashing peeled off because improperly put
on, and because put on in very cold weather and not pro-
tected from frost.   The superintendent testified that the
final certificate was ·refused on account of the defective
whitewashing; also that he ordered the extra work on be-
half of Ricker, the owner, and not on behalf of Buestrin.
Some testimony was also given tending to support the
counterclaim.   ·

The jury found a verdict for the plaintiff for $318, with interest, and from judgment thereon the defendant appealed.

For the appellant there was a brief by *Wells, Brigham & Upham*, and oral argument by *J. R. Brigham*. To the point that the question of the proper completion of the work is not for the jury unless the refusal of the architect's certificate is so perverse, oppressive, and unjust that the inference of bad faith will arise, they cited *Hudson v. McCartney*, 33 Wis. 331; *Tetz v. Butterfield*, 54 id. 242; *Forristal v. Milwaukee*, 57 id. 632; *Bentley v. Davidson*, 74 id. 424; *Smith v. Brady*, 17 N. Y. 173; *Oakwood Retreat Asso. v. Rathborne*, 65 Wis. 177; *Clarke v. Watson*, 114 Eng. C. L. 278.

*M. N. Lando*, for the respondent.

Wɪɴsʟow, J.  The complaint and proofs of the plaintiff show that the parties agreed that the work should be done to the satisfaction of the superintendents, that their decision as to the quality of work or material should be conclusive, and that payment should be made only on their certificates. This agreement is valid and binding, and no right of action lies in favor of the plaintiff for payments alleged to be due under the contract, without such certificates, unless it be alleged and proven that such certificates are withheld dishonestly, fraudulently, or arbitrarily, or clearly by mistake. *Hudson v. McCartney*, 33 Wis. 331; *Bentley v. Davidson*, 74 Wis. 420. There are no allegations in the complaint of fraud, dishonesty, or merely arbitrary action on the part of the superintendents, nor are there any proofs which would sustain a verdict to that effect.

It is very doubtful whether the complaint sufficiently alleges that the action of the superintendents in refusing to give plaintiff a certificate on account of the defective whitewashing was a mistake, but, conceding that the allegation is sufficient, the proofs are entirely insufficient to es-

Wendt vs. Vogel.

tablish such clear mistake on the part of the superintendents as will excuse the lack of a certificate. The mistake here referred to is not a mere error in judgment as to the quality of the work or the responsibility for defects therein, upon conflicting evidence, which may be overthrown by a preponderance of evidence before the jury, but it means unintentional misapprehension or ignorance of some material fact, and it must be clearly established by the evidence, and so gross and palpable that it is equivalent in its effects to dishonest, fraudulent, or merely arbitrary action. To hold otherwise would virtually emasculate the provisions of the contract, and render the condition for the obtaining of certificates practically of no effect.

In a case like the present, the plaintiff, having no certificate, cannot recover unless he excuses the absence of the required certificate by proof that it was dishonestly or arbitrarily refused, or by clear proof of mistake, as above defined. The certificate may, of course, be waived, but there is no proof of facts amounting to waiver here. It follows from these views that the plaintiff showed no cause of action as to the amounts claimed to be due under the contract, because he had no certificate and did not by proper proof excuse its absence. The trial judge, however, allowed the plaintiff's claim under the contract to go to the jury. It is unnecessary to set forth the charge at length on this subject. The purport and effect of it was to tell the jury that, if they found from the evidence that the reason the whitewashing fell off was because Buestrin furnished green lumber for the building, then they should find for the plaintiff. Due exceptions were preserved to the charge. The erroneous character of the charge is apparent from what has been said. It practically eliminated the decision of the superintendent from the case. It allowed the jury to nullify the decision of the superintendent upon a simple preponderance of the evidence as to the quality of

the work, whereas his decision is absolutely binding on the parties, unless shown to be dishonest, arbitrary, or clearly mistaken. It cannot be overcome by mere preponderance of evidence against it.

As to the extra work, amounting to $157, it was admitted by the defendant that the work was done, and no fault was found with it; but it was claimed by him that it was ordered by the superintendent on behalf of the owner of the building. The circuit judge charged the jury that the bill of extras must be allowed the plaintiff in any event. We think this was erroneous. The superintendent who ordered the extra work testified that he ordered it on behalf of Ricker, and not on behalf of Buestrin. If it was ordered on behalf of Ricker, and the plaintiff understood or knew that fact, he clearly could not recover the value of it from Buestrin. We think there was sufficient proof to take this question to the jury.

*By the Court.*— Judgment reversed, and action remanded for a new trial.