EKSTROM, Respondent, v. STATE, Appellant.*

*No. 12. Argued November 25, 1969.—Decided December 19, 1969.*
(Also reported in 172 N. W. 2d 660.)

* Motion for rehearing denied, with costs, on March 3, 1970.

For the appellant the cause was argued by *Richard E. Barrett* and *E. Gordon Young,* assistant attorneys general, with whom on the briefs was *Robert W. Warren,* attorney general.

For the respondent there were briefs by *Jasper, Winner, Perina & Rouse* and *Robert I. Perina,* attorneys, and *Harry Sauthoff, Jr.,* of counsel, all of Madison, and oral argument by *Mr. Sauthoff.*

HANLEY, J. The basic issue on this appeal is whether the evidence is sufficient to show that the state's refusal to accept material was fraudulent or done in bad faith. Several other issues are raised. However, their significance was predicated upon the propriety of the submission of the case to the jury.

### *Sufficiency of Evidence.*

Ekstrom's cause of action against the state is predicated upon the existence of an implied promise that the state would not interfere with his right to perform under

the contract. Reliance is thus placed upon 17 Am. Jur. 2d, *Contracts*, pp. 653, 654, sec. 256:

"Every contract implies good faith and fair dealing between the parties to it, and a duty of co-operation on the part of both parties. Accordingly, whenever the co-operation of the promisee is necessary for the performance of the promise, there is a condition implied that the co-operation will be given. Indeed, it may be said that contracts impose on the parties thereto a duty to do everything necessary to carry them out. . . . Moreover, there is an implied undertaking in every contract on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out his part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Ordinarily if one exacts a promise from another to perform an act, the law implies a counter-promise against arbitrary or unreasonable conduct on the part of the promisee. . . ."

Although Ekstrom is correct as to the existence of such an implied promise, the instant contract expressly provides that:

"1105.01 **Authority of Engineer.** All work shall be done under the supervision of the engineer and to his satisfaction. He shall decide all questions which arise as to the quality and acceptability of materials furnished, work performed, manner of performance, rate of progress of the work, interpretation of the plans and specifications, acceptable fulfillment of the contract, compensation, and disputes and mutual rights between contractors under the specifications. He shall determine the amount and quantity of work performed and materials furnished, and his decision and estimate shall be final. His estimate in such event shall be a condition precedent to the right of the contractor to receive money due him under the contract." [1]

---

[1] Standard Specifications for Road and Bridge Construction of the State Highway Commission of Wisconsin, p. 27, sec. 1105.01, which were incorporated into the contract by reference.

As indicated by the state the effect of such "satisfaction" clauses is well settled in this jurisdiction. Where, as here, the parties agree that performance and materials must be to the satisfaction of one whose decision is final, such satisfaction is a condition precedent to one's right to recover the contract price. Such condition can only be dispensed with by a showing of fraud, bad faith or mistake. *Hudson v. McCartney* (1873), 33 Wis. 331. Furthermore, it is immaterial that the authority to make such final determination rests in a party to the contract. *Keachie v. Starkweather Drainage Dist.* (1919), 168 Wis. 298, 304, 305, 170 N. W. 236.

In reference to a showing of fraud this court has stated:

". . . If fraud in the arbiter can ever be established by proof that he refused to certify the execution of the work when the same had been duly and properly performed, it can only be in those cases where the refusal is shown to have been grossly and palpably perverse, oppressive and unjust, so much so that the inference of bad faith and dishonesty would at once arise when the facts are known. . . ." *Hudson v. McCartney, supra,* at page 342.

As to the "mistake" necessary to dispense with proof of satisfaction, it was held in *Wauwatosa v. Jacobus & Winding Concrete Construction Co.* (1937), 223 Wis. 401, 410, 271 N. W. 21, that:

" '. . . "the mistake here referred to is not a mere error in judgment as to the quality of the work or the responsibility for defects therein, upon conflicting evidence, which may be overthrown by a preponderance of evidence before the jury, but it means unintentional misapprehension or ignorance of some material fact, and it must be clearly established by the evidence, and so gross and palpable that it is equivalent in its effects to dishonest, fraudulent, or merely arbitrary action." *Wendt v. Vogel,* 87 Wis. 462, 466, 58 N. W. 764.' "

*See also Keachie v. Starkweather Drainage Dist., supra.*

In the case now before this court, Ekstrom refers to lengthy testimony as to the inadequacy of the samples tested by the state as well as to the inaccuracy of its testing methods and machinery. Testimony to this effect, however, does not establish that the state's engineer acted in such a manner as to dispense with proof of satisfaction. Nor is any mistake in testing methods or machinery sufficient to constitute "mistake" as defined in *Wauwatosa v. Jacobus, supra.*

The testimony to which this court has been referred indicates at most that in refusing to accept Ekstrom's materials the state's engineer may have been guilty of a mistake in judgment. Such a view of the evidence is consistent with that of the trial judge who stated that:

> ". . . Actually, the court at no time had the feeling that Leonard Burr had exercised bad faith as we know it. . . . The record in this case does not justify an inference that Leonard Burr acted with design or fraudulent intent, but, rather, that he failed to exercise sound judgment and was a little too enthusiastic in asserting his authority. In other words, it is the opinion of this court that the breach of contract of which the state was guilty was not committed in bad faith. . . ."

Clearly the state's refusal to accept material was not "shown to have been grossly and palpably perverse, oppressive and unjust, so much so that the inference of bad faith and dishonesty would at once arise when the facts [become] known." *Hudson v. McCartney, supra,* at page 342.

Under such circumstances it was error for the court to submit the case to the jury. The jury should not have been permitted to go into evidence of the materials' quality in order to impeach the decision of the engineer. *Hudson v. McCartney, supra,* at page 342.

> ". . . [I]t is not upon every claim made by the mechanic or workman that he has complied with his contract, or upon every controversy arising between him and

the arbiter, that the power of deciding is to be taken away from the latter, and the question carried into a court of law, there to be determined by a jury of twelve inexperienced men, or by the judge of the court alone. . . ." *Hudson v. McCartney, supra,* at page 342.

The parties were free to agree as to the terms of their contract. Ekstrom was familiar wth the tests employed by the state and agreed that in determining the adequacy of the materials the state engineer's determination was to be final.

By allowing the jury to overturn the engineer's decision on the mere preponderance of the evidence, the very terms of the contract were violated. *Wendt v. Vogel* (1894), 87 Wis. 462, 466, 58 N. W. 764; *Hudson v. McCartney, supra.*

Ekstrom attempts to distinguish *Hudson v. McCartney* and the previously mentioned cases from the instant case on the theory that such cases involved actions to recover the contract price. He contends that by its very terms the contract provided that satisfaction was a condition precedent to recovery of the contract price and that his action is not on the contract, but rather is for breach of such contract.

This contention assumes that an action to recover the originally agreed price is not an action for breach. Yet it is clear that failure to pay for that received under a contract has always constituted a form of breach. There exists no distinction between a situation wherein a party's conduct necessitates additional expense on the part of the other contracting party and a situation wherein one refuses to pay the originally agreed amount. In both instances the nonbreaching party has received less than originally contemplated and, therefore, incurred damage. The only distinction is that in the former situation the damage is somewhat indirect.

Ekstrom offers no reason why the cited authorities should be limited to those situations wherein the breach

involved was the failure to pay the original contract amount, nor can such reason be found.

We conclude that since there has been no allegation nor proof of bad faith on the part of the state, the judgment must be reversed. It follows that the cross appeal of the respondent must be dismissed.

*By the Court.*—Judgment reversed, cause remanded with directions to dismiss the complaint.