ARROWHEAD GROWERS SALES COMPANY, Appellant, V. CENTRAL SANDS PRODUCE, INC., and another, Respondents.*

*No. 128. Argued October 5, 1970.—Decided November 3, 1970.*
(Also reported in 180 N. W. 2d 567.)

* Motion for rehearing denied, with costs, on January 5, 1971.

384

For the appellant there were briefs and oral argument by *Howard Latton* of Portage.

For the respondents there was a brief by *Robert A. Bablitch*, attorney, and *W. E. Atwell, Jr.*, of counsel, both of Stevens Point, and oral argument by *Mr. Atwell*.

CONNOR T. HANSEN, J. We consider the issues which are dispositive of this case to be:

(1) Did the plaintiff breach the contract in failing to market the defendant's potatoes with dispatch, and, if so, was the breach material?

(2) Did the plaintiff breach the contract in failing to furnish defendant's growers with itemized information as to sales, and, if so, was the breach material?

*Marketing of potatoes.*

The resolution of this issue requires a review of the record to determine whether the findings of the trial court are supported by credible evidence and not against the great weight and clear preponderance of the evidence.

We have reviewed the rather extensive record, and as might be presumed, there is a conflict in the testimony presented by the respective parties as to whether

the plaintiff marketed the defendant's product with dispatch, as provided in the contract. The growers brought their product to the shed of the defendant. The defendant had the responsibility for moving sufficient potatoes from the bins to meet the orders from the plaintiff, together with a sufficient allowance for potatoes which would not pass the required grade. The potatoes making up the orders were promptly shipped and the remaining potatoes, which resulted from any overestimate of the amount required to fill the order and those potatoes which did not meet the grade but were salable, became part of the floor inventory. Potatoes comprising the floor inventory could be sold directly from the floor or used to fill orders on sales effected by the plaintiff.

Testimony offered by the plaintiff was, among other things, intended to prove that slow movement of potatoes was limited to sales from the floor inventory; the volume of its sales in 1965 as compared with previous years showed proper performance of the contract; the volume of the potatoes left on the floor was small and they were there but for a short period of time; the 1965 marketing conditions were bad and the quality of the potato crop poor; and that a comparatively small quantity of potatoes deteriorated because of slow movement.

The testimony offered by the defendant and a number of growers was exactly opposite that of the testimony offered by the plaintiff in nearly every respect.

A meeting was held in August, 1965, to discuss with the plaintiff the problem of slow sales. The meeting was called because the growers were dissatisfied with the slow movement of their potatoes. At the meeting, the growers requested that they be permitted to use other brokers to move their produce more rapidly. However, the plaintiff refused and the slow movement continued after the meeting. The testimony of slow sales included both sales from the bins and from floor inventory.

The trial court found that potatoes were a very perishable crop and that speed in handling was of great importance from a financial standpoint, and that the plaintiff failed to market the defendant's potatoes expeditiously and in the manner contemplated by the contract. The trial court also found the breach material.

The trial court's findings will not be upset unless contrary to the great weight and clear preponderance of the evidence. *Estate of Erbach* (1969), 41 Wis. 2d 335, 340, 164 N. W. 2d 238. We here determine that the findings of the trial court on this issue are supported by credible evidence and not contrary to the great weight and clear preponderance of the evidence.

Plaintiff contends that its adequate performance under the contract was shown by testimony that the plaintiff was doing the best he could. Our attention is directed to *Ekstrom v. State* (1969), 45 Wis. 2d 218, 172 N. W. 2d 660, for the proposition that breach is not shown by mere error in judgment. However, the court in that case was discussing the conditions under which a "satisfaction" clause may be dispensed with. The plaintiff's obligation under the contract in this case was not to use his best judgment in marketing or to market to the best of his ability, but to market "with dispatch." The trial court in its decision, stated that the nature of the product and the nature of the contract "casts a strong burden on the Plaintiff to see that the Defendant's potatoes were marketed expeditiously. . . ."

The plaintiff also contends that the defendant failed to show its performance was improper because there was no testimony by experts in the field of potato marketing, and that the growers were not qualified to evaluate the plaintiff's performance under the contract. However, the lack of expert testimony goes to the question whether the defendant met its burden of proof. The growers did not evaluate the plaintiff's marketing ability, but testified to slow movement of their own potatoes. Their testimony

in that regard was competent to show lack of dispatch in marketing and, therefore, the failure of the plaintiff to meet its obligations under the contract. *Tunkieicz v. Libby, McNeill & Libby* (1969), 44 Wis. 2d 414, 420, 171 N. W. 2d 393.

Plaintiff further contends that the defendant's proof of improper performance was not adequate because the defendant failed to introduce written records of the floor inventory. However, the written records of floor inventory did not show which grower's potatoes were part of the floor inventory on any given day, nor did they show the length of time the potatoes remained on the floor.

*Information on sales.*

The trial court found that the plaintiff did not furnish to the individual growers prompt, itemized information as to the sales of potatoes, as provided in the contract; that such failure constituted a breach of contract and was material.

We agree that failure to supply the itemized information to the growers as to sales constituted a breach of the contract; however, we do not consider it a material breach in this case.

Paragraph 6 of the contract provided:

"6. Second Party agrees in all dealings hereunder to conform to the provisions of the Perishable Agricultural Commodities Act as amended and all regulations issued thereunder. It is furthermore understood by the First and Second Parties that all terms of this Agreement supplement but in no way supersede the terms of the Second Party's regular Grower Agent Contract issued to First Party on each individual load, all Producers being made familiar with terms of said Growers Agent Contracts by First Party."

The PACA regulations classify produce sales representatives as "brokers" or "growers' agents" and provide dif-

ferent accounting and reporting requirements for the two classifications.

Sec. 46.28 (b), PACA provides:

". . . . When the broker authorized to sell, invoice the buyer, collect and remit to his principal, he shall render an itemized accounting to the principal promptly on receipt of payment, showing the true gross selling price, all brokerage fees deducted, any auction charges and any other expenses incurred in connection with the sale of the shipment. The failure to account truly and correctly and make full payment promptly is a violation of the act."

Sec. 46.32 (b), PACA, describing the duties of growers' agents provides:

". . . . Unless there is a specific agreement with the growers to pool all various growers' produce, the accounting to each of the growers shall itemize the actual expenses incurred for the various operations conducted by the agent and all the details of the disposition of the produce received from each grower including all sales, adjustments, rejections, details of consigned or jointed shipments and sales through brokers, auctions, and status of all claims filed with or collected from the carriers. . . ."

The trial court found plaintiff to be a broker. We do not consider it material whether plaintiff was a broker or a growers' agent as set forth by the PACA requirements. On appeal, both parties practically concede the immateriality of this issue. The sales information reported by the plaintiff did not comply with either the broker or growers' agent requirements of the PACA.

The fact is that the parties operated under the provisions of the PACA in 1963, 1964 and 1965. Although there is a slight conflict in the testimony, the great preponderance of the evidence indicates that no significant objection was made by the defendant or the individual growers about plaintiff's reporting of sales until after defendant gave notice of its intent to terminate the contract.

Having acquiesced in the reporting methods used by the plaintiff for three years prior to the termination of the contract, the defendant cannot now assert the plaintiff's failure to comply with the PACA regulations is a material breach of the contract. *Baierl v. Riesenecker* (1930), 201 Wis. 454, 461, 227 N. W. 9, 230 N. W. 605. Therefore, the breach of failure to report information on sales, as required by the contract, does not constitute a material breach under the facts of this case.

The plaintiff raises several other issues, on appeal, which we have considered and we conclude they are not determinative of this case.

Since the term of the contract has expired, on appeal the plaintiff asks judgment providing for an accounting and damages pursuant to the contract wherein plaintiff is entitled to a fee on all potatoes sold by the defendant. Since we affirm the judgment of the trial court finding that the plaintiff had materially breached the contract and the defendant was, therefore, justified in terminating it, we do not reach this question.

The plaintiff also asserts that the trial court neglected to award costs. December 30, 1966, the trial court sustained the demurrer of the plaintiff to the second, third, fourth and fifth causes of action in defendant's counterclaim and stated that any costs involved would be determined at the conclusion of the case. The plaintiff does not contest the portion of the judgment awarding defendant damages in the amount of $3,712.05 on its first counterclaim. In the judgment entered December 20, 1968, costs were taxed against the plaintiff in the principal case in the amount of $333.66 and against the plaintiff on defendant's counterclaim in the amount of $100. We consider costs were properly taxed at the time judgment was entered in the trial court.

*By the Court.*—Judgment affirmed.