In the Matter of SMITH MANAGE-
MENT, INC., Debtor.

LIVESEY ENTERPRISES, Plaintiff,

v.

SMITH MANAGEMENT, INC.,
Defendant.

Bankruptcy No. MM11–80–00445.

United States Bankruptcy Court,
W. D. Wisconsin.

Dec. 22, 1980.

Mark D. Burish, Aagaard & Burish, Madison, Wis., for Livesey Enterprises, plaintiff.

James D. Sweet, Kassner & Sweet, Madison, Wis., for Smith Management, Inc., defendant-debtor.

## OPINION

ROBERT D. MARTIN, Bankruptcy Judge.

This case arises on an application of the named plaintiff to compel adoption or rejection of a lease. By stipulation, all issues

were resolved or deferred except whether the defendant debtor has an interest in certain equipment which it held at the time of filing herein pursuant to the subject lease agreement. A trial was held on October 1, 1980. The law was ably briefed by counsel prior to the trial.

On April 4, 1978, Livesey Enterprises (Livesey), plaintiff, leased for ten years to Smith Management, Inc. (Smith), defendant, a business space in Westgate Shopping Center in Madison. Incorporated in the space lease was a lease for restaurant equipment located on the leased premises. The equipment lease was for a term of five years with rental payment of $1,000 a month for the first two years and $2,000 a month for the remaining three years. The equipment lease included a clause stating:

Tenant further agrees to purchase all said equipment from the Landlord on April 1, 1983 for the cash sum of $24,-000.00. Said equipment shall remain the sole property of Landlord until purchased by Tenant. After purchase by Tenant, said equipment shall become the property of Tenant for all purposes under this lease.

The total amount to be paid by Smith for the use and purchase of the equipment was $120,000.

Smith defaulted in payment of the space and equipment leases in July, 1979, and continued in default until January, 1980. Smith then made a payment to Livesey and reached an agreement for payment of rental arrearages and future rent, but again defaulted. Livesey received no further payments. Smith filed a petition pursuant to 11 U.S.C. Chapter 11 on April 14, 1980, and continued in possession of the premises and equipment until June 30, 1980. The parties dispute whether Smith's departure was voluntary or forced by Livesey's actions. Nevertheless possession of the leased premises and equipment were officially restored to Livesey in September of 1980 based on a stipulation whereby Smith rejected the real property lease while the equipment lease was neither accepted nor

rejected. It was agreed that the equipment would remain subject to Smith's claim of an equity interest. Although testimony as to the equipment's present value if removed and auctioned was given, no evidence was given as to the equipment's present value in place.

The sole issue at the trial was whether the equipment lease was a true lease. Smith argued that it was a purchase and security agreement and that because Livesey had not perfected its security interest, Livesey's lien is subordinate to the interest of the bankruptcy estate. Livesey argued that the lease was a true lease, giving Smith no equity interest in the equipment after breach and termination of the lease.

■ The question of whether an agreement is a true lease or a security agreement has received extensive comment in prior cases. In *In the Matter of Gehrke Enterprises, Inc.*, 1 B.R. 647 (W.D.Wis.1979) this court adopted a three-pronged test to determine if a lease agreement is a security device subject to the remedy provisions of Article 9 of the Uniform Commercial Code. Under that test the required elements for a security lease are: (1) there must be an agreement by the lessee to pay the lessor a set amount; (2) such amount must be equivalent to the value of the leased goods; and (3) the lessee must become the owner or have the option to become the owner of the leased goods. If any one of these elements is lacking, the lease is not a finance lease, but a true lease.

The first element is very troublesome in the present case. The terms of the equipment lease require monthly rental payments totalling $96,000 over a five-year period with an additional balloon payment of $24,000 at the end of the five-year period. This would appear to establish a sum certain of $120,000. However, there is no term of the lease which accelerates the monthly obligations upon a default to make the entire lease obligation a currently due single sum. Typically, a finance lease contains such a "hell or high water clause" [1] obligat-

1. Ronald M. DeKoven, Leases of Equipment: *Puritan Leasing Co. v. August*, A Dangerous Decision, 12 Univ. of San Fran.L.Rev., pages 250, 260 (1978).

ing the lessee to make rental payments regardless of the circumstances. Livesey argues that because the equipment lease is subject to terms primarily intended to limit the real property rights under the space lease and contained no "hell or high water clause," the obligation to pay was not absolute, but rather periodic for the period or periods of possession. Even if the analogy to real estate leases is taken seriously, a form of analysis which is discouraged when considering equipment leases,[2] the argument will not survive scrutiny under Wisconsin's landlord and tenant law. Wis.Stat. § 704.29, although requiring landlord to mitigate, clearly allows collection of the entire rental amounts without limitation to the period of possession stating:

> [I]f the tenant is removed for failure to pay rent or any other breach of a lease, the landlord can recover rent and damages except amounts which he could mitigate in accordance with this section, unless he has expressly agreed to accept a surrender of the premises and end the tenant's liability.

There is no express term of the lease agreement by which Livesey agreed to accept surrender of the premises or the equipment and thereby end Smith's liability. No actual surrender of the premises or the equipment was made or agreed to prior to the filing of this Chapter 11 proceeding and no surrender of the equipment has been sought or approved as a part of these proceedings except by the present proceeding. Smith's liability for the entire amount of the agreed rent has, therefore, never been expressly terminated as required by Wis.Stat. § 704.29.

It must further be determined under applicable state law whether Livesey could recover the $24,000 balloon payment for the equipment: Livesey contends that the final $24,000 payment was severable from the rental obligation and represented the only purchase agreement between the parties. Livesey contends further that completion of the equipment lease remains a condition precedent to any obligation it may have to sell the equipment to Smith.

Although many cases have analyzed the presence of final options on lease agreements, the $24,000 balloon payment is not an option to purchase.

> An option to purchase is a continuing promise or offer given by the landowner to sell real estate to another at a specified price within a specified period of time. *Bratt v. Peterson*, 31 Wis.2d 447, 451, 143 N.W.2d 538 (1965).

A more general statement of the definition is found in Williston, Contracts (3d ed.) § 61A, page 199:

> [A]n option has been defined as "a unilateral contract whereby the optionor for a valuable consideration grants the optionee a right to make a contract of purchase but does not bind the optionee to do so; the optionor is bound during the life of the option; but the optionee is not."

▇ The important element of an option is the buyer's choice. The language of the purchase clause, "Tenant further agrees to purchase all said equipment on April 1, 1983 for the cash sum of $24,000.00" leaves Smith no discretion. Smith is bound to purchase and Livesey to sell at a specific time and price. Neither party is required to fulfill any condition, except as to time, before the purchase of the equipment would take place.

Furthermore, there is no lease language requiring completion of the lease payments as a condition precedent[3] to the purchase of

---

**2.** DeKoven, Proceedings After Default by Lessee Under a True Lease of Equipment, Chapter 29B, *Secured Transactions*, Bender's Uniform Commercial Code Service, Vol. 1C, pages 3001–3008, 3011–3012.

**3.** "A precedent condition in a contract is the typical kind. It must be performed or happen before a duty of immediate performance arises on the promise which the condition qualifies ... 'Condition precedent' is one calling for performance of some act after the contract is entered into on performance of which the obligations depend...." *Price v. Ross*, 45 Wis.2d 301, 306, 172 N.W.2d 633 (1969) citing with approval 5 Williston, Contracts (3d ed.) § 666A, pages 141 143.

the equipment. Wisconsin cases discussing contracts with explicit language identifying an act or event which must occur before the contract would be enforceable have recognized conditions precedent. Specific language requiring satisfactory completion of the work as evidenced by an architect's certificate was held a condition precedent to the builder's right to payment. *Ekstrom v. State*, 45 Wis.2d 218, 223, 172 N.W.2d 660 (1969), *John Pritzlaff Hardware Co. v. Berghoefer and others*, 103 Wis. 359, 361, 364, 79 N.W. 564 (1899), *Bentley and another v. Davidson and another*, 74 Wis. 420, 424, 43 N.W. 139 (1889), *Hudson and another v. McCartney*, 33 Wis. 331, 333, 341 (1873). Two express requirements were held to be conditions precedent to a dance studio lease and franchise, in a case which found a third requirement, not identified in the written document as a condition precedent, was not an enforceable prerequisite to performance. *Price v. Ross*, 45 Wis.2d 301, 304, 172 N.W.2d 633 (1969). Only the terms specifically provided in the contract as being prerequisites to the contract becoming effective were accepted by the court as conditions precedent.

In *Hafemann v. Korinek*, 266 Wis. 450, 63 N.W.2d 835 (1954) a lease containing an option to purchase stated "such option to purchase shall be effective only if the lessees pay the rent punctually and perform all the other terms and conditions of this indenture at the time and in the manner when the same are to be performed." *Id.* at 452, 63 N.W.2d 835. Payment of the rent was considered by the court to be a condition precedent to being granted the option to purchase. The express language of the lease conditioned the option to purchase on punctual payment of the rent.

■ In the present case, the contract language does not expressly make the purchase agreement contingent on the completion of the lease payments. Wisconsin law appears to require specific language in order to create a condition precedent. No such language is found in this lease. If Livesey intended the completion of the

lease payments to be a condition precedent to the purchase agreement, it could have included language that conditioned the sale. The appropriate rule of construction requires that where there is doubt as to the meaning of the instrument, it is to be construed against the party who drafted it. *Marion v. Orson's Camera Centers, Inc.*, 29 Wis.2d 339, 343, 138 N.W.2d 733 (1966). The court cannot construe the lease in such a way as to make the purchase agreement conditional when the plain language of the lease as drafted by Livesey fails to make the purchase agreement conditional.

Although no cases have been found which present precisely the issues of this case, lease arrangements that contain options to purchase have been considered by the courts. Those cases are divided as to whether the purchase option is valid after a default on the lease.

In determining whether the option to purchase was dependent on performance of the terms of the lease or was independent thereof, the courts have said that the question was one of construction of the instrument and of determining the intent of the parties. So it has been held that where the option to purchase is conditioned on the performance of the terms of the lease, a breach or default under the lease agreement precludes the lessee's right to enforce the option, although some cases, upon reaching the conclusion that the option to purchase and the lease were independent, have held that a breach of the latter did not preclude the lessee's right to enforce the option. 53 A.L.R.3d 435, 438. (annotation)

In addition to *Hafemann, supra*, the Wisconsin Supreme Court has found a default in the lease payments terminated an option to purchase in *Helbig v. Bonsness*, 227 Wis. 52, 55, 277 N.W. 634 (1938). In *Helbig*, the lease payments were not considered a condition precedent to exercise of the option, rather the lease payments were considered the only consideration given for the option. Because no lease payments were ever made, the purchase option failed for lack of con-

sideration. There is no contention that consideration is lacking in the Smith-Livesey lease.

The present case must be distinguished from both *Hafemann* and *Helbig* because on the one hand it does not include a condition precedent and on the other there undisputedly is other consideration provided in the agreement for sale. Absent either of those elements, cases have found options enforceable despite termination of associated leases. *Cook v. Young*, 269 S.W.2d 457 (Tex.1954); *Giblin v. Sudduth*, 300 S.W.2d 330 (Tex.1957); and *Mathews Slate Co. v. New Empire Slate Co.*, 122 F. 972 (N.Y. 1903).

Having determined that the purchase agreement does not become enforceable for failure of a condition precedent, it is necessary to determine what amount must be paid under its terms. To do so, we must determine the damages available on default. Although there is no requirement of acceleration on default, damages based on Smith's breach of the lease should put Livesey in "as good a position as he would have been if the contract had been performed." Dobbs, Remedies § 12.1, page 786 (1973). To be put in that position, Livesey must recover both the lost periodic rent and the amount of the purchase agreement less any amount obtained in mitigation.

■ The Uniform Commercial Code Article 2 remedy when a buyer wrongfully "fails to make payment due on or before delivery or repudiates with respect to part of or the whole" (Wis.Stat. 402.703) is set out at Wis.Stat. § 402.706, which states:

(1) Under the conditions stated in s. 402.-703 on seller's remedies, the seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under s. 402.-710, but less expenses saved in consequence of the buyer's breach.

Upon Smith's repudiation of the purchase agreement, Livesey would be entitled to the remedy in Wis.Stat. § 402.706, to-wit: the purchase price less mitigation.[4] The possible reduction in damages for losses covered by mitigation does not change Smith's liability for the specified sum. Smith is required to put Livesey in the same position in which it would have been had the contract been performed. Mitigation might reduce the money damages recoverable from Smith to the extent that Livesey has received an alternative payment, but it does not upset the calculation of the total to which Livesey is entitled.

■ The first element of the *Gehrke* test has been met. The purchase of the equipment is not conditioned on the completion of the lease payments and is, therefore, enforceable despite the lease default. The amount of that purchase price, $24,000, together with the entire periodic rent is recoverable by Livesey as damages under the applicable state law. The lease set a fixed amount which must be paid to Livesey.

The second element of the *Gehrke* test requires the amount paid to be equivalent to the value of the leased goods. According to DeKoven, the test adopted generally in *Gehrke, supra*, requires that:

[O]ne must determine the amount the lessee was obligated to pay was equal to the value of the leased goods. Before examining the relevant facts, certain principals must be established. The determination of the amount and the value should be made as of the time the lessor and the lessee were bound with respect to the subject transaction. Since parties to a transaction generally negotiate terms giving effect to the then-current market value, it is reasonable to determine the value of the leased goods at that time ... this will eliminate the finance element of the transaction. The value of the leased goods should be determined, absent fraud or duress, by the purchase price of the equipment; or, if that is not

---

**4.** Article 2 of the Uniform Commercial Code applies to "transactions in goods; it does not apply to any transaction which although in the form of an unconditional contract to sell or present sale is intended to operate only as a security transaction." Wis.Stat. § 402.102.

subject to proof, by its market value. DeKoven, Leases of Equipment: *Puritan Leasing Co. v. August*, A Dangerous Decision, at page 261.

The equipment was originally purchased in 1974 for $108,000. Mr. Smith testified that prior to signing the equipment lease, Livesey had offered to sell the equipment to him for $85,000. Smith further testified that the equipment lease was an accommodation to him when separate financing of the equipment purchase was unavailable. The original seller of the equipment, an expert in equipment values, declined to give a present value for the equipment in place but indicated that restaurant equipment has a considerable loss of value immediately after its sale as new equipment, but thereafter depreciates little for as long as it works. This expert testimony tends to support a value in 1978 approximately 20 percent below new cost in 1974. Furthermore, the total payment of $120,000 called for by the equipment lease would closely approximate $85,000 paid in periodic payments over five years together with 12 percent interest on the unpaid balance. It is, therefore, reasonable to conclude that Smith agreed to pay the substantial equivalent of the value of the leased goods.

The third element of the *Gehrke* test is that the lessee must become the owner or have the option to become the owner of the leased goods. This requirement is met by the plain wording in the lease agreement which states:

> Tenant further agrees to purchase all said equipment from the landlord on April 1, 1983 for the cash sum of $24,000.00. Said equipment shall remain the sole property of Landlord until purchased by Tenant. After purchase by Tenant, said equipment shall become the property of Tenant for all purposes under this lease.

■ Upon the foregoing, I conclude that the subject lease agreement has all of the necessary attributes of a security agreement and ought not to be treated as a true lease. As a security agreement, it is subject to Article 9 of the Uniform Commercial Code, Wis.Stat., Chapter 409, and there is no evidence that Livesey took steps to perfect its security agreement as required by Wis.Stat. §§ 409.302 and 409.401.

■ Pursuant to 11 U.S.C. § 1107(a), Smith as debtor-in-possession has all the rights and powers over the subject collateral that are given to a trustee under Chapter 11. Those rights and powers include ability to avoid transfers of property or obligations, under 11 U.S.C. § 544(a), which provides:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable . . .

Thus Smith has rights to the equipment superior to all but those who have timely complied with the perfection requirements of Wis.Stats., Chapter 409. Having failed to prove that it had so perfected its interest, Livesey stands junior to Smith in any claim to the equipment.

Judgment may be entered for the defendant debtor consistent with these findings of fact and conclusions of law.