In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-1133

BETCO CORPORATION, LTD.,

*Plaintiff-Appellant*,

*v.*

MALCOLM D. PEACOCK, MARILYN PEACOCK, B. HOLDINGS, INC.,
AND E. HOLDINGS, LLC,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 14-cv-193-wmc — **William M. Conley**, *Judge*.

ARGUED SEPTEMBER 8, 2017 — DECIDED NOVEMBER 27, 2017

Before MANION, KANNE, and HAMILTON, *Circuit Judges*.

KANNE, *Circuit Judge*. Betco Corporation purchased the as-
sets of two bioaugmentation companies from Marilyn and
Malcolm Peacock. The Asset Purchase Agreement included
the sale of equipment at the Peacocks' Beloit, Wisconsin plant.
Betco asked Malcolm to remain at the Beloit plant after the
sale as president. Eventually, Betco discovered that the Beloit
plant was delivering defective products to customers. It filed

this suit against the Peacocks and their holding companies for fraud, negligent misrepresentation, breach of contract, and breach of the duty of good faith and fair dealing.

After two rounds of summary judgment and a bench trial, the district court dismissed the entirety of Betco's suit. Betco appeals the dismissal of its breach of contract and breach of the duty of good faith and fair dealing claims. We affirm.

## I. BACKGROUND

Malcolm Peacock was the founder of Bio-Systems Corporation and Enviro-Zyme International, LLC (together, Bio-Systems). The companies produced biodegradation products that contained bacteria designed to break down various forms of waste. Malcolm developed a "wet-batch" process at Bio-Systems's Beloit plant to produce the bacteria. Customers requested, and often required, certificates of analysis documenting the bacteria level in the product at the time of sale. So Bio-Systems counted the bacteria in a product before sale using a spiral plater and "ProtoCOL" counter.

In 2010, Betco Corporation purchased Bio-Systems's assets from Malcolm and Marilyn Peacock and their holding companies, B. Holdings, Inc. and E. Holdings, LLC, (together, the Peacocks). Before closing, Betco visited Bio-Systems's sites, spoke with Bio-Systems's personnel, and examined Bio-Systems's financial information. At closing, Betco paid the Peacocks $5 million and placed $500,000 in escrow. The Asset Purchase Agreement ("the Agreement") required Betco to pay out the $500,000 two years after closing if it did not identify any problems in that time that required using the escrow funds to fix.

After closing, Betco asked Malcolm to continue to run the Beloit plant just as he had before the sale but now as president of Betco's newly-formed Bio-Systems of Ohio ("Bio-Ohio"). Betco instructed Malcolm to focus on sales and profits. Later, Betco identified problems with the products being shipped from the Beloit plant. First, though Betco knew before closing that the bacteria yields were inconsistent at the Beloit plant, it learned within a year of closing that some products were being shipped to customers with below-specification bacteria counts. A few months later, Betco nonetheless paid out the escrow funds early in exchange for a 12% discount. Second, after paying out the escrow, Betco discovered that certificates of analysis were being re-used or falsified by the sales team.

It's unclear to what extent Malcolm concealed the issues from Betco. According to some former employees, Malcolm was not receptive when employees questioned Bio-Ohio's methods. Further, one employee testified that Malcolm instructed him to not speak directly with Betco personnel. But other employees testified that Malcolm never discouraged them from communicating with Betco after the sale. In fact, Malcolm himself suggested that Betco's Vice President of Research and Development visit the Beloit plant for a week to learn more about Bio-Ohio. The vice president said that he was busy, so he only made a number of short visits.

In April 2012, Betco sued the Peacocks in federal district court in Ohio for fraud, negligent misrepresentation, breach of contract, and breach of the duty of good faith and fair dealing. The case was transferred to Wisconsin.

There, the court first dismissed Betco's negligent misrepresentation and breach of contract claims against the Peacocks, finding both claims were time-barred by Section 10.05

of the Agreement. The court later dismissed Betco's fraud claim against the Peacocks and its breach of the duty of good faith claim against all the defendants except Malcolm. After a bench trial, the court ruled in Malcolm's favor on the duty of good faith claim. The court found that Betco failed to prove that Malcolm violated the duty of good faith and, further, that Betco hadn't shown any cognizable injury from the alleged violation.

## II. ANALYSIS

Betco raises two issues on appeal. First, Betco appeals the district court's summary judgment dismissal of its breach of contract claim. It argues that the court erred in finding that the claim was time-barred. Second, Betco appeals the district court's judgment on the duty of good faith claim. It argues that the court erred in finding that Malcolm had not violated this duty and that Betco failed to prove damages even if he had violated it.

We address each issue in turn.

### A.  The dismissal of Betco's breach of contract claim

We review a grant of summary judgment *de novo*, construing the facts in the light most favorable to the nonmovant. *See Consolino v. Towne*, 872 F.3d 825, 829 (7th Cir. 2017). But this court has "long refused to consider arguments that were not presented to the district court in response to summary judgment motions." *Laborers' Int'l Union v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (quoting *Arendt v. Vetta Sports, Inc.*, 99 F.3d 231, 237 (7th Cir. 1996)). When a party presents an underdeveloped or conclusory argument below, the party does not preserve its claim for appeal. *C & N Corp. v. Kane*, 756 F.3d 1024, 1026 (7th Cir. 2014); *United States v. Dunkel*, 927 F.2d 955,

956 (7th Cir. 1991) ("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim.").

During the summary judgment phase, Betco told the court that Section 10.05 of the Agreement bars any claim related to a representation or warranty in the Agreement that is brought more than one year after closing unless the claim is one for fraud or intentional misrepresentation. It then went on to say that its breach of contract claim was not time-barred.

On appeal, Betco asks that we construe these two statements as an argument that its breach of contract claim was not time-barred *because* it was a claim for intentional misrepresentation. In essence, then, Betco wants the substance of its argument to the district court to prevail over its form. But Betco did not give the district court any substance. It did not give a single reason why its breach of contract claim should be interpreted as one for intentional misrepresentation. In fact, the district court wrote that "Betco … offered no argument as to *how* its breach of contract claim, Count Three … survives Section 10.05 of the [Agreement]." *Betco Corp. v. Peacock*, No. 14-cv-193-wmc, 2015 WL 856603, at *13 (W.D. Wis. Feb. 27, 2015) (emphasis added).

Betco cannot revive a waived claim. It failed to develop any argument in the district court to explain why its breach of contract claim should be interpreted as one for intentional misrepresentation instead. Therefore, we decline to consider the merits of that argument now.

B. *The judgment in Malcolm's favor on Betco's breach of the duty of good faith claim*

When hearing an appeal from a bench trial, we review legal decisions *de novo* and findings of fact for clear error.

*Spurgin-Dienst v. United States*, 359 F.3d 451, 453 (7th Cir. 2004).
At trial on Betco's breach of the duty of good faith claim
against Malcolm, the district court used the Agreement, not
Malcolm's employment contract, as its starting point. Betco
doesn't contest this on appeal, and we agree that it was
proper. The district court then ruled in Malcolm's favor, find-
ing that Malcolm did not breach the duty and that Betco also
failed to prove damages from any alleged breach. On appeal,
Betco doesn't contest the district court's factual findings, so we
review the judgment *de novo* using the district court's findings
of fact.

Under Wisconsin law, "[e]very contract implies good faith
and fair dealing between the parties to it, and a duty of coop-
eration on the part of both parties." *Beidel v. Sideline Software,
Inc.*, 842 N.W.2d 240, 250 (Wis. 2013) (quoting *Chayka v. San-
tini,* 176 N.W.2d 561, 564 n. 7 (Wis. 1970)). This duty is "half-
way between a fiduciary duty (the duty of *utmost* good faith)
and the duty merely to refrain from active fraud." *Mkt. St. As-
socs., Ltd. v. Frey*, 941 F.2d 588, 595 (7th Cir. 1991). The plaintiff
bears the burden of showing a breach of good faith and fair
dealing. *See Zenith Ins. Co. v. Empl'rs Ins. of Wausau*, 141 F.3d
300, 308 (7th Cir. 1998) (applying Wisconsin law).

A party may breach its implied duty of good faith when it
follows "the letter but not the spirit of an agreement" because
otherwise parties could "'accomplish[] exactly what the
agreement of the parties sought to prevent.'" *Beidel*, 842
N.W.2d at 250–51 (quoting *Chayka*, 176 N.W.2d at 564). In
other words, the duty of good faith accompanies not just what
the contract says but also what the parties expected to occur.
*See* Wis. JI-Civil 3044 (2007); *cf. Foseid v. State Bank of Cross
Plains*, 541 N.W.2d 203, 212 (Wis. Ct. App. 1995) ("[A] party

may be liable for breach of the implied contractual covenant of good faith even though all the terms of the written agreement may have been fulfilled.").

We look to what the parties expected from the arrangement because a plaintiff must offer some evidence that the party accused of bad faith has actually denied the plaintiff the intended benefits of the contract. *Zenith*, 141 F.3d at 308. The duty of good faith "means that each party to a contract will not do something which will have the effect of injuring or destroying the [ability] of the other party to receive the benefits of the contract." Wis. JI-Civil 3044 (2007); *see also Metro. Ventures, LLC v. GEA Assocs.*, 717 N.W.2d 58, 69 (Wis. 2006) (describing the duty as a guarantee not to "destroy[] … the right of the other party to receive the fruits of the contract") (quoting *Ekstrom v. State*, 172 N.W.2d 660, 661 (Wis. 1969)).

To be sure, a party can act in bad faith without injuring or destroying the other party's ability to receive the benefits of the contract. In such a circumstance, the plaintiff can't succeed on a claim for breach of the duty of good faith. *See Horicon Foods, Inc. v. Gehl Foods, LLC*, No. 15–C–0689, 2016 WL 4926189, at *8 (E.D. Wis. Sept. 15, 2016) (dismissing claim for the breach of the duty of good faith because plaintiff had not shown that any alleged breach caused harm); *Marine Travelift, Inc. v. Marine Lift Sys., Inc.*, No. 10–C–1046, 2013 WL 6255689, at *17–18 (E.D. Wis. Dec. 4, 2013) (dismissing claim because the plaintiff failed to show that it suffered any injury as a result of the defendant's challenged behavior); *Dennehy v. Cousins Subs Sys., Inc.*, No. Civ. 02–1772(RHK/JSM, 2003 WL 1955168, at *4 (D. Minn. Apr. 21, 2003) (applying Wisconsin law to dismiss the claim when the plaintiffs "received exactly what they bargained for").

This is exactly the case here. Malcolm should not have instructed the plant employees to falsify certificates of analysis and to ship product with bacteria counts too low to meet specifications. Still, Betco did not demonstrate that Malcolm's actions at Bio-Ohio destroyed its contractual expectations.

When Betco purchased Bio-Systems, it expected that Bio-Ohio would be profitable and wouldn't face customer claims for shipping products with intentionally falsified certificates of analysis. This is what it received. Moreover, Betco *did not* expect that it was purchasing flawless processes.

First, Betco failed to present any evidence that it did not receive a profitable company free of consumer claims. In fact, the district court noted that it was "not apparent that *any* customers had complained post-sale about the quality of the product they received." *Betco Corp. v. Peacock*, No. 14-cv-193-wmc, 2016 WL 7429460, at *10 (W.D. Wis. Dec. 23, 2016). There was no evidence "that any customers: challenged [Bio-Ohio's] practices; complained of falsified or inaccurate certificates of analysis; complained about product testing; or raised any issue regarding inaccurate product specifications." *Id.* The district court gave Betco the opportunity to show that it had damages "aris[ing] directly out of sales of product with inaccurate certificates of analysis or of product before acquisition or post-acquisition," and Betco said it was not able to do so. (Doc. 191, Trial Tr., at 10). We are not persuaded by Betco's post-argument memorandum suggesting that it in fact submitted evidence on customer-related damages. The district court did not rule on the admissibility of that evidence, and it was not introduced, or even proffered, at trial.

The district court further found that Betco received what it expected to receive: "a business producing, manufacturing

and selling a successful line of products to the satisfaction of its customer base." *Betco Corp.*, 2016 WL 7429460, at *10. Betco does not contest this factual finding. Instead, Betco argues that it should have been permitted to introduce evidence that "the company it purchased was … worth far less than what Betco paid for it." (Appellant's Br. at 34.) But, under Wisconsin law, the relevant inquiry for a breach of good faith is not whether Betco paid the appropriate price for the company—as it would be in an action for intentional misrepresentation or fraud—but whether Betco received the benefits that it expected when it entered into the contract. It did.

Second, Betco was aware when it entered the contract that bacteria yields were inconsistent at the Beloit plant. Thus, Betco knew that it could be acquiring flawed processes, and it must have expected that it might have to expend funds to make the bacteria yields consistent. Accordingly, Malcolm's actions in producing products with bacteria counts too low to meet specifications could not have destroyed Betco's contractual expectations.

As a final note, Betco's claim of injury at trial was that, had it known of the problems with the plant earlier, it would have sued for a breach of contract before the Agreement's one-year time limit expired or it would have withheld the money retained in escrow. But, "[i]t is not a breach of the duty of good faith if a course of action available to [Betco] could have avoided the harm and the course was not followed." Wis. JI-Civil 3044 (2007). Had Betco timely investigated the concerns of plant employees, it would have discovered the issues within the one-year time limit. And if it had not paid out the escrow money early, it could have withheld it to remedy the issues.

Though we do not condone Malcolm's actions, the parties' contract compelled the district court's award of attorney's fees to the Peacocks. Under the Agreement, the parties explicitly agreed that the "prevailing party" would receive attorney's fees and costs whenever a party brought an action. *See Betco Corp.*, 2016 WL 7429460, at \*11. The district court concluded that Betco did not prevail on any of its claims and that the Peacocks were entitled to the dismissal of every claim. Thus, the district court properly found that the Peacocks were the prevailing party entitled to attorney's fees and costs.

### III.  CONCLUSION

Betco failed to develop its argument in the district court that its breach of contract claim was in fact a claim for intentional misrepresentation that should have survived the Agreement's one-year time limit. Thus, it waived this claim, and we decline to hear its merits.

However, Betco did not waive its claim against Malcolm Peacock for breach of the duty of good faith. But our only inquiry in analyzing this claim is whether Malcolm acted in a way that injured or destroyed Betco's ability to receive the benefits of the contract. Because Betco proffered no evidence at trial of consumer complaints, it cannot show that it was deprived of its contractual expectations. To the contrary, Betco received a company producing a successful line of products to the satisfaction of its customers.

For these reasons, we AFFIRM the dismissal of Betco's breach of contract claim against the Peacocks, and we also AFFIRM the judgment in favor of Malcolm Peacock on Betco's breach of the duty of good faith and fair dealing claim.