**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 23, 2018[*]
Decided October 25, 2018

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 18-1367

| | |
|---|---|
| JEFFREY D. BENSON, *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 16-C-1589 |
| NANCY BOWENS, et al., *Defendants-Appellees.* | William C. Griesbach, *Chief Judge*. |

**O R D E R**

Jeffrey Benson, a Wisconsin inmate, sued prison officials under 42 U.S.C. § 1983, alleging that they were deliberately indifferent to his medical needs after they failed to provide him with shoes to treat his diabetic foot pain for more than two years after a podiatrist prescribed them. The district court entered summary judgment for the defendants. Because Benson did not submit sufficient evidence to show that any defendant knowingly disregarded a serious threat to his health, we affirm.

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

We review the evidence in the light most favorable to Benson and draw all reasonable inferences in his favor. *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018). In June 2014, Benson met with a podiatrist at the University of Wisconsin. She recommended that he wear "extra-depth diabetic type of shoes" with "a customized orthotic" because "the state-issued shoes are very unsupportive and generally at a higher risk for ulceration in a diabetic population." She then wrote a prescription for "diabetic shoes, extra-depth tennis shoes such as New Balance with custom orthotics."

After this appointment, Nancy Bowens, a nurse practitioner at the prison, referred Benson to Aljan, a company that supplies the Wisconsin Department of Corrections with orthotics. The Aljan orthotist fitted Benson for orthotics; and he also observed that Benson "need[ed] larger shoes" and suggested a few styles by circling pictures of them on an order form.

Benson talked to Bowens about the shoe recommendations, and she referred his request to the prison's Special Needs Committee, which must approve any inmate treatment or equipment that differs from state-issued equipment or standard procedures. To receive specialty shoes, the inmate must be unable to wear state-issued footwear because of a significant medical condition. In March 2015, the Committee denied Benson's request for the shoes that the orthotist had recommended because he did not meet the criteria.

Instead, Tom Tess, a prison official responsible for purchasing shoes for inmates, measured Benson's feet and ordered state-issued shoes with inserts that could be removed to make room for the orthotics. Before his shoes arrived, Benson repeatedly sent messages to Bowens informing her that he was in pain and had lost feeling in his feet. The medical staff responded by changing the type and dose of his medication multiple times. Benson received his state-issued shoes in May 2015. He also managed to obtain his own shoes, but there is no evidence in the record that they accommodated his orthotics or improved his condition.

After receiving the state-issued shoes with removable inserts, Benson continued to complain about foot pain, so in November 2015, Jamie Barker ordered him extra-wide, state-issued boots. Barker told Benson that the orthotist did not know what he was talking about and therefore disregarded the size he recommended. The boots Barker ordered, however, were too small for the orthotics, so Bowens made Benson another appointment at Aljan to modify the orthotics. After the appointment, the orthotist noted that he might be able to stretch the boots to relieve Benson's bunions.

This led Bowens to send Benson back to Aljan to receive replacement shoes and orthotics that fit, but the orthotist was not authorized to supply shoes for inmates. At that point, Bowens referred Benson's predicament back to the Special Needs Committee. On May 31, 2016, two years after the podiatrist's original recommendation for diabetic-type, extra-depth shoes, the Committee agreed that Benson met the criteria for alternative shoes and approved his request.

Still, Benson did not receive the shoes. He eventually filed this lawsuit against a handful of prison officials and medical staff, alleging that they recklessly ignored his pain and delayed his medically necessary footwear. Upon receiving Benson's complaint, the defendants discovered that Tess never ordered the Committee-approved shoes before he retired in September 2016. A prison official met with Benson in March 2017 and they chose a shoe to order for him.

The defendants moved for summary judgment, arguing that they had treated Benson's foot pain in multiple ways and that the ordering delay was negligence at most. In support, Tess declared that he must have forgotten to order the shoes or assign the task, and if so, it was unintentional. Bowens attested that she referred Benson's needs to the orthotist and the Committee multiple times and that she provided appropriate care for his other medical needs. The district court concluded that Benson did not present sufficient evidence to allow a reasonable jury to find that the defendants acted with deliberate indifference toward Benson's medical needs. It ruled that the evidence showed that the delay was the result of negligence rather than malice and that the officials took multiple steps to treat Benson's condition.

On appeal, Benson argues that the defendants violated his constitutional rights because they delayed his receipt of medically necessary shoes. Benson disputes the district court's entry of judgment for only Tess, Bowens, and Barker; he therefore waives any argument about the other defendants' conduct. *See Crestview Vill. Apartments v. HUD*, 383 F.3d 552, 555 (7th Cir. 2004). Further, Benson failed to discuss Barker's involvement when responding to the defendants' motion for summary judgment, even though the defendants argued specifically that no one other than Tess or Barker was personally involved in the alleged deprivation of Benson's rights. Therefore, he also waived any argument on appeal that judgment should not have been entered in Barker's favor. *Betco Corp. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017).

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when they are deliberately indifferent to serious medical needs.

*Estelle v. Gamble,* 429 U.S. 97, 104 (1976). To succeed on a deliberate indifference claim, a plaintiff must demonstrate that (1) he had a serious medical need and (2) the defendant's state of mind was subjective recklessness—that is, the defendant knew of and disregarded an excessive health risk. *Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017); *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1072 (7th Cir. 2012). The parties dispute whether Benson's diabetic foot pain is an objectively serious medical condition, but, like the district court, we do not address that issue because Benson did not present sufficient evidence that the defendants were subjectively reckless.

Benson argues that Tess was deliberately indifferent when he failed to order him the Committee-approved alternative shoes. Inexplicably delaying treatment without a penological interest can support an inference of deliberate indifference. *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). True, the delay between the Special Needs Committee approving shoes for Benson in May 2016 and prison staff ordering the shoes in March 2017 was lengthy. But Tess declared that the delay was inadvertent and unintentional, and Benson did not dispute this fact with evidence. Inadvertence does not rise to deliberate indifference. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). Although Benson says he followed up with Tess multiple times, he submitted no supporting evidence of this at the summary judgment stage.

Moreover, although Benson did not receive diabetic-specific shoes until after March 2017, the prison did order him non-standard footwear to accommodate his custom orthotics; Benson has no evidence that this course of action was reckless or a futile pursuit of ineffective treatment. *See McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010). The shoes that the podiatrist and orthotist identified as examples were not the only shoes that would comply with the prison's Eighth Amendment obligations. *Burton v. Downey*, 805 F.3d 776, 786 (7th Cir. 2015) ("[E]vidence that another doctor would have followed a different course of treatment is insufficient … .").

Benson next argues that Bowens, the nurse practitioner, was deliberately indifferent by failing to follow the podiatrist's full recommendation for extra-depth shoes *and* a custom orthotic. But Bowens was not authorized to provide Benson with alternative shoes; only the Special Needs Committee could do that. Instead, Bowens made Benson multiple appointments with the orthotist, changed his medication no fewer than four times, and twice submitted his request to the Special Needs Committee. She was not personally responsible for the committee's denial of the first request nor for Tess's failure to order the shoes after they were approved. Therefore, a reasonable jury could not find that Bowens was deliberately indifferent. *See Walker v. Benjamin*, 293 F.3d

1030, 1038 (7th Cir. 2002) (doctor not deliberately indifferent where he ordered multiple tests, ordered consultation with a specialist, and had no control over delays).

                                                                                                             AFFIRMED